IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH SHEPHERD, <br><br> Plaintiff, <br><br> v. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA, a Cigna Company, <br><br> Defendant. | Case No. 11 C 3846 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court is Defendant Life Insurance Company of North America's ("LINA") Motion for a Protective Order and to Quash the Subpoena of Dr. David S. Knapp. For the reasons stated herein, the Court denies the Motion in its entirety.

### II. BACKGROUND

Plaintiff in this case alleges that Defendant improperly stopped paying her disability benefits under her insurance policy, which she obtained through her employer, Yellow Book.

She questions the reliability of the insurance doctor, Dr. Knapp, whose report was used in Defendant's denial of continued disability benefits. Plaintiff alleges Knapp frequently provides such services for Defendant and other disability insurers, and so may have financial biases.

Further, Plaintiff claims that Defendant, as both payor and claim administrator, had a conflict of interest in its disability decision. Further, she alleges Defendant was specifically biased toward Yellow Book because several of its employees were out on disability at the same time, and that Defendant targeted Yellow Book employees out of financial motives.

Accordingly, Plaintiff seeks information regarding how her particular claim was handled and the financial picture of Defendant's Yellow Book interactions.

The Court has been asked to perform a "*de novo* review" of Defendant's denial of continued disability benefits to Plaintiff.

### III. <u>LEGAL STANDARD</u>

This action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002, *et seq.* ("ERISA").

As the Seventh Circuit and the parties have noted, "*de novo* review" is somewhat of a misnomer, and the Court's function here is more akin to making an "independent decision" as to whether Plaintiff is entitled, under the terms of the plan she holds with Defendant, to continued disability benefits. *Krolnik v. The Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). The term "review" is more appropriate to instances where the policy, which the Seventh Circuit notes is very much like a contract, specifically entitles the insurance company to deference to its decision (an "arbitrary and capricious" standard). *Id.* In those

instances, review (and sometimes discovery) is often limited to the administrative record presented to the insurance company when it rendered its decision. *Id.* The exception in those arbitrary and capricious cases is when plaintiff shows bias or conflict of interest on the part of the defendant; then, "more cautious review" must be given. *Semien v. Life Ins. Co. of North Am.*, 436 F.3d 805 (2006).

Curtailed discovery is not necessarily the norm in *de novo* ERISA review cases. While a court *may* find that limiting discovery to the "administrative" record is proper, because the review is *de novo*, it may also admit (and hence allow discovery on) "additional evidence necessary to enable it to make an informed and independent judgment." *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994). Litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts. *Krolnik*, 570 F.3d at 843 (quoting *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 112-113 (1989)).

But, as Defendant points out, some courts in this District have found that, in *de novo* review, since the primary issue is whether the plaintiff qualifies for benefits under the plan, an exploration of the defendants' motives, or whether they followed their own procedures in denying the benefits, is irrelevant. *See Walsh v. Long Term Disability Coverage for All Employees Located in*

*the United States of DeVry, Inc.*, No. 07-1478, slip op. 4 (N.D. Ill. February 6, 2008) ("*Walsh I*") (citing *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007); *see also Kuznowicz v. Wrigley Sales Co., LLC*, No. 11-165, 2011 U.S. Dist. LEXIS 89996 *3-5 (N.D. Ill. August 10, 2011) (allowing extra discovery on matters related to the medical evidence and whether plaintiff qualified under the plan, but denying depositions of insurance company employees).

The cornerstone for *Walsh* and *Kuznowicz* is *Diaz*, which reversed a summary judgment motion in a *de novo* ERISA benefits case. *Diaz*, 499 F.3d 640. *Diaz*, in discussing what was necessary for summary judgment, noted that "the question before the district court was not whether Prudential gave Diaz a full and fair hearing or undertook a selective review of the evidence; rather, it was the ultimate question whether Diaz was entitled to the benefits he sought under the plan." *Id.* at 643. "What happened before the plan administrator or ERISA fiduciary is irrelevant." *Id.*

Before *Diaz*, at least one District Court had found it appropriate in a *de novo* ERISA case to allow discovery on whether "the determination was[,] for lack of a better term[,] 'tainted.'" *Marantz v. Life Ins. Co. of N.Y.*, No. 06-3051 Tr. of Proceedings 2-3 (N.D. Ill. October 30, 2006). Judge Milton Shadur allowed the depositions of an insurance company doctor, the insurance company's claims manager and a hired vocational expert in order to assess the

credibility of the doctor's finding and to see if the insurance company had met is obligation to weigh the evidence "for and against." *See Id.* at 1-4; *see also Marantz*, Pl.'s Motion to Compel, September 13, 2006, ECF No. 24; *see also Marantz*, Def.'s Resp., October 2, 2006, ECF No. 27.

Lastly, *Patton v. MFS/Sun Life Financial Distributors* spoke specifically to the district court's discovery discretion in *de novo* ERISA cases.

> "[T]he district court may wish to consider . . . whether the plan administrator faced a conflict of interest and, as Sun Life notes, whether the parties had a chance to present their evidence in the ERISA administrative proceeding. . . . But no factor is necessarily determinative in any particular case. The district court must take the relevant factors into consideration and provide a reasonable explanation for its decision; so long as it does so, its decision will be affirmed. Reversals will be rare."

*Patton v. MFS/Sun Life Financial Distributors,* 480 F.3d 478, 491 (7th Cir 2007).

As to doctors who give reports used in disability determinations, several courts have found exploration of their motives relevant, even in *de novo* review cases. *Cf. Krolnik*, 570 F.3d at 844 (noting "at trial Krolnik would be free to offer medical evidence of his own and *cross-examine the physicians who produced the reports* that underlie [the] decision.") (emphasis added); *see also Walsh I*, 07-1478, slip op. 4 (N.D. Ill. February 6, 2008) (writing, "The court finds that evidence of Dr.

Foye's possible bias in drafting his report is both relevant and necessary to the court's *informed* and independent consideration of Walsh's claim.") (emphasis in original); *see also Walsh v. Long Term Disability Coverage for All Employees Located in United States of DeVry, Inc.*, 601 F.Supp.2d 1035, 1048 ("*Walsh II*") (writing "The court will consider Dr. Foye's financial relationship with Prudential (he was paid over $137,000 by Prudential in 2005 alone) a factor in evaluating the reliability of Dr. Foye's report).

## IV.  ANALYSIS

The first question to address is whether *Diaz* forecloses on discovery of a defendant insurance company's motives or whether the decision to explore that topic remains within the sound discretion of the Court.  The Court believes *Diaz*, in conjunction with *Patton*, at the very least leaves the issue unsettled and does not definitively foreclose the Court's discretion in this area.

First, *Diaz* was a ruling reversing summary judgment, not specifically a ruling regarding the allowable scope of discovery. Second, much of the language the parties cite in *Diaz* was geared toward focusing the district court on its ultimate task.  As *Diaz* itself notes "Normally, we would not belabor the question of the proper approach toward a motion for summary judgment . . . but for a time there was some confusion in this case about what the district court was being asked to do."  *Diaz*, 499 F.3d at 643.

Lastly, and perhaps most importantly, *Diaz* cites to *Patton*. *Patton's* clear indication that conflict-of-interest matters will sometimes be an appropriate area of inquiry in *de novo* ERISA cases indicates, at minimum, that the discovery issue is not settled law definitively foreclosing this Court's discretion.

The next question to address is whether the materials sought by Plaintiff are relevant. Plaintiff has alleged that Defendant has an inherent conflict of interest as both the claim administrator and the payor. This is a conflict of interest, but alone does not tip the scale; nearly all insurance companies fit that description. Plaintiff, however, further claims to have received information that the insurance company specifically targeted her employer's group of employees to terminate benefits because there were a number of company employees on disability at the same time.

At least at the discovery stage, this is enough to raise a question regarding the *why* and *how* of Defendant's decision in addition to the ultimate question of *whether* the decision was the correct one. As *Krolnik* made clear, *de novo* ERISA cases are like ordinary contract cases. While good or bad faith in honoring a contract is seldom the ultimate question, it can often be potentially relevant as part of the ultimate inquiry into whether the contract was honored.

Therefore, the Court finds the requested items and interrogatories regarding LINA's alleged biases potentially relevant.

The Court must also address the Defendant's claim of undue burden. Interestingly, Defendant does not argue that the volume of materials and detail requested is, in itself, unduly burdensome. Rather, it argues that because the material sought is irrelevant, it is *per se* unduly burdensome. Def.'s Memo, 9; Def.'s Reply, 7. Because the Court has found the items potentially relevant that argument fails.

Therefore, because the Court believes the items requested are potentially relevant, it finds them necessary to make an informed and independent judgment of their relevance to the ultimate question in this case.

Likewise, the Court finds the materials requested regarding the financial biases of Dr. Knapp and Intracorp potentially relevant. The Plaintiff has alleged, essentially, that Dr. Knapp is the Defendant's hired gun, as well as the hired gun of several other insurers. Plaintiff cites several cases in which Dr. Knapp has served as an insurer's expert. Knapp's potential bias is relevant to evaluating the credibility of his report regarding Plaintiff, a report this Court will have to consider in reaching a determination regarding disability. Several other courts have found it a potentially relevant area of inquiry; we do too.

Therefore, because the Court believes the items requested are potentially relevant to whether Dr. Knapp has any financial bias, it finds those items relating to his possible bias, as well as the items sought in the subpoena, necessary to make an informed and independent judgment of their relevance to the ultimate question in this case.

## V.  CONCLUSION

For the reasons stated herein, the Defendant's Motion for a Protective Order and to Quash the Subpoena of Dr. Knapp is denied.

**IT IS SO ORDERED.**

										   _____
										   Harry D. Leinenweber, Judge
										   United States District Court

**DATE:** 2/3/2012